

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-23-2004

# In Re: Diet Drugs

Precedential or Non-Precedential: Non-Precedential

Docket No. 02-3529

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"In Re: Diet Drugs " (2004). *2004 Decisions.* Paper 991.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/991

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 02-3529

IN RE: DIET DRUGS (PHENTERMINE/
FENFLURAMINE/DEXFENFLURAMINE)
PRODUCTS LIABILITY LITIGATION

*AUDRICT SHERRIE AGE; AUDRY ADAMS; JENNIFER ASHBY; GLENDA
BARNES; NICOLE BARNES; CLARENCE BARNEY; MARIE BARNEY; THERESA
BARTHOLOMEW; PEARLIE BENDER; MAXINE BETHLEY; STEPHANIE CLARK
BETHLEY; RUBY BEVERLY; TESHA BICKHAN; ELIZABETH BOSWORTH;
DOROTHY BOYD; ETTA BRISCOE; ALMEDA BROWN; DEBORAH BROWN;
MARQUERITE BURNS; BEVERLY BUTLER; DEBORAH BUTLER; DELLA
CAPLES; GERTRUDE CARR; LINDA WILLIAMS CARTER;
REGINAL CARTER; VERONICA CAUSEY; KAREN CHAUBERT; BELINDA
CHISM; DOROTHY COOK; GILDA CRAWFORD; TABATHA CUIELLETE;
MYRNA DARBY; ANN DUPLESSIS; EARLENE EACHER; WANDA EVANS;
TRACY FLORES; KATHERINE FORD; ANDREA FORSYTH; RICHARD
FRANCOIS; VADA FRANKLIN; KIM GIBSON; BERNICE HEATH; JAMIE
HOGAN; PATRICK MORRIS; SANDRA NUNEZ; GAIL PRICE;
JANIE ROBERTSON; MELISSA SPURLOCK-HOMER,

Appellants

*(Amended per Clerk's Order dated October 10, 2002)

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(MDL No. 1203)
District Judge: Honorable Harvey Bartle, III

Submitted Pursuant to LAR 34.1(a)
December 10, 2003

Before: AMBRO, FUENTES and CHERTOFF, <u>Circuit Judges</u>

(Filed February 23, 2004)

OPINION

Chertoff, <u>Circuit Judge</u>.

This appeal is taken from the District Court's Pretrial Order No. (PTO) 2567 by class members who exercised an intermediate opt-out of the nationwide Diet Drug settlement agreement. Their subsequent state lawsuits were removed to the MDL court from the Louisiana state courts and appellants sought to have their tort cases remanded to state courts, arguing that certain defendants did not consent to removal. PTO 2567 declined to remand appellants' actions on the grounds that the non-consenting defendants had been collusively joined. Appellants seek review of the District Court's determination, and an order remanding the cases to the Louisiana state courts. We

2

conclude that we lack jurisdiction to entertain the appeal.

## I.

We have previously set forth the basic facts in the Diet Drug litigation. See In re Diet Drugs, 282 F.3d 230 (3d Cir. 2002). Because this opinion is written only for the parties, we recite only the facts relevant to our decision.

Prior to 1997, Wyeth, then named American Home Products,[1] sold two prescription drugs for the treatment of obesity, Pondimin and Redux. In September 1997, the United States Food and Drug Administration (FDA) issued a press release stating that a "higher than expected percentage of" patients taking the drugs "had abnormal echocardiograms, even though they had no symptoms." Press Release, FDA, FDA Announces Withdrawal Fenfluramine and Dexfenfluramine (Fen-Phen) (Sept. 30, 1998). In response to that press release, Wyeth voluntarily withdrew the products from the market. Prior to Wyeth having done so, however, some 5.8 million individuals had used one or the other of the two drugs. Subsequent studies suggest that the drugs may be linked to serious cardiopulmonary side effects—primarily, heart valve regurgitation (the reverse flow of blood through a closed valve of the heart). It is those side effects that are the subject of the Diet Drug litigation at hand.

The federal Diet Drug actions were consolidated for pretrial purposes in the Eastern District of Pennsylvania pursuant to MDL 1203 and, in 1999, Wyeth entered into

---

[1] American Home Products changed its name to Wyeth in March 2002. We use the name Wyeth.

a Nationwide Class Action Settlement Agreement (the "Settlement Agreement"), executed and approved in that court. The Settlement Agreement set up a multi-tiered framework for benefit entitlement and the filing, processing, and payment of claims. The Settlement Agreement permits class members who satisfy a series of requirements to opt-out of the settlement and back into the tort system at an intermediate point, subject to certain restrictions.

Appellants are forty-eight intermediate opt-outs from the Settlement Agreement. On June 5, 2001, appellants, along with two other intermediate opt-outs, Crystal Gatlin and Verna Brown (collectively with appellants, the "intervenors"), filed their tort action in Louisiana state court by intervening in an already existing state Diet Drug case. The intervention petition named Wyeth as a defendant, along with eight manufacturers of phentermine (the "phentermine defendants") whose citizenship was diverse from all of the intervenors, and three Louisiana physicians, whose citizenship was not diverse from any of the intervenors. It was undisputed before the District Court that only Gatlin and Brown had actually been treated by any of the Louisiana defendants.

On July 12, 2001, Wyeth moved to remove the case to federal court. That motion was granted, and the case was ultimately transferred to the Eastern District of Pennsylvania pursuant to MDL 1203. The intervenors, appellants included, requested that the MDL court remand the case to the Louisiana courts, arguing that Wyeth had not shown that all defendants—specifically the phentermine defendants—had consented to

4

removal. Wyeth, for its part, argued that the non-consent of the phentermine defendants was collusive, and that the intervenors lacked an intent to pursue judgment against either the phentermine defendants or the non-diverse physician defendants. The intervenors disputed Wyeth's contentions.

Limited discovery ensued and, on July 16, 2002, the District Court held a hearing to determine whether remand was appropriate. On August 28, 2002, the District Court issued PTO 2567 denying appellants' request for remand, but granting the remand requests of intervenors Gatlin and Brown—the only two intervenors who had been treated by the Louisiana physician defendants.[2] Appellants timely appealed. On September 24, 2002, this Court requested letter briefing with respect to a possible jurisdictional defect.

## II.

Appellants urge this Court to consider the appeal on two grounds. Apparently conceding that PTO 2567 is not a final order under 28 U.S.C. § 1291,[3] appellants first urge this Court to reach the merits of their appeal pursuant to the collateral order doctrine as announced in Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 545 (1949), and its progeny. As a fallback, appellants urge this Court to exercise its authority to issue a writ

---

[2] Intervenors Gatlin and Brown have not, for obvious reasons, appealed the District Court's determination and so are not counted among the "appellants."

[3] Our precedent is clear that an order denying a motion to remand is not a final order for purposes of 28 U.S.C. § 1291. See Aberle Hosiery Co. v. Am. Arbitration Ass'n, 461 F.2d 1005, 1006 (3d Cir. 1972); Thaysen v. Lumbermens Mut. Cas. Co., 329 F.2d 149 (3d Cir. 1964).

of mandamus under the All Writs Act.  See 28 U.S.C. § 1651.  Finding neither basis for jurisdiction to apply, we will dismiss the appeal.

## A.

The collateral order doctrine holds that a non-final order may yet be grounds for appeal if the order: "[(1)] conclusively determine[s] the disputed question, [(2)] resolve[s] an important issue completely separate from the merits of the action, and [(3) is] effectively unreviewable on appeal from a final judgment." Carr v. Am. Red Cross, 17 F.3d 671, 675 (3d Cir. 1994) (internal quotations omitted); see also Cohen, 337 U.S. at 545.  All three prongs must be satisfied before an appellate court will review an otherwise interlocutory order.  Carr, 17 F.3d at 675.  No one contests that PTO 2567 "conclusively determine[d]" the question of remand, and that resolution of the question of remand was "completely separate from the merits of the action . . . ." Id.  The only question, therefore, is whether PTO 2567 is "effectively unreviewable on appeal from a final judgment." Id.

Appellants raise three arguments in favor of a finding that PTO 2567 would be essentially unreviewable if we rule that interlocutory review is unavailable.  First, appellants argue that they would be relegated to the "slow-moving MDL pretrial process," and be kept from a more rapid judgment that, they assert, would be available in state courts.  Appellant's Letter Br. at 11.  Second, appellants argue that interlocutory review is required because PTO 2567 fails to honor Settlement Agreement terms that, they argue,

6

implicitly "include[d] a strong presumption honoring [opt-outs'] choice of forum."

Appellant's Letter Br. at 11. Third, appellants argue that we should exercise interlocutory

review because, they claim, PTO 2567 extends to "all Diet Drug plaintiffs everywhere in

the country." Appellant's Letter Br. at 2. In addition, appellants cite In re Pan Am Corp.,

16 F.3d 513, 515-16 (2d Cir. 1994) and In re Dow Corning Corp., 86 F.3d 482, 488 (6th

Cir. 1996) for the proposition that, "[i]n view of the delays inherent in resolving mass

torts," an "'equity oriented' treatment of reviewability may be appropriate in bankruptcy

and mass tort cases." Appellant's Letter Br. at 11. None of appellants' arguments are

sufficient to justify exercise of jurisdiction under the collateral order doctrine.

That appellants may experience delay in obtaining review of PTO 2567 cannot

justify interlocutory review. Were that so, there would be no end to the number of

interlocutory decisions that would be immediately appealable under the collateral order

doctrine, rendering hollow 28 U.S.C. § 1291's requirement of "finality." Even assuming

that appellants will experience delay longer than that experienced in ordinary litigation,

mere delay is insufficient to distinguish appellants from the other litigants that have found

themselves at the unfavorable end of a remand determination and been required to wait

until after final judgment to appeal that determination. See, e.g., La Chemise Lacoste v.

Alligator Co., 506 F.2d 339, 341-42 (3d Cir. 1974); Aberle, 461 F.2d at 1006; Thaysen,

329 F.2d at 149; see also Neal v. Brown, 980 F.2d 747, 748 (D.C. Cir. 1992); Estate of

George Augustus Bishop v. Bechtel Power Corp., 905 F.2d 1272, 1274-75 (9th Cir.

1990); <u>Rohrer, Hibler & Replogle, Inc. v. Perkins</u>, 728 F.2d 860, 862 (7th Cir. 1984).

Next, that PTO 2567 may fail to honor a "presumption" in favor of opt-out plaintiffs' forum of choice, or that it may extend to all opt-out plaintiffs everywhere, is unhelpful to appellants in establishing that interlocutory review is appropriate. Both arguments go to the merits of appellants' claim and not to whether we may exercise jurisdiction. At the conclusion of appellant's action, the propriety of PTO 2567 is an issue that can be raised before us. Of course, appellants would prefer to have a favorable ruling now, but that does not distinguish them, for example, from the run of the mill litigant who vainly seeks interlocutory review of the denial of a motion to dismiss. And, conversely, should appellants ultimately prevail on the merits in federal court, the denial of remand will evaporate as an issue.

Finally, appellants' reliance on <u>In re Pan Am</u> and <u>In re Dow Corning</u> for the proposition that adverse remand determinations in mass tort cases should be more easily appealable than in other cases is misplaced. First, we are not aware that this Circuit has ever adopted a relaxed standard for reviewing remand determinations in *any* cases. Second, as appellees point out, any arguably "relaxed standards" applied in <u>In re Pan Am</u> and <u>In re Dow Corning</u> were attributable to the fact that those cases arose in the bankruptcy context, where courts relax the finality requirement in order to expedite the restructuring of the debtor and preserve its assets for creditors. <u>See</u> <u>In re Pan Am</u>, 16 F.3d at 515; <u>In re Dow Corning</u>, 86 F.3d at 488. Wyeth is not bankrupt nor, contrary to

8

the speculation of appellants, is there any reason to think that it may be soon.

Appellants have made no showing that PTO 2567 would be "effectively unreviewable after final judgment on the merits." Interlocutory appeal under the collateral order doctrine is, therefore, not available.

**B.**

Appellants also assert that this Court should review PTO 2567 by way of a writ of mandamus under the All Writs Act. See 28 U.S.C.§ 1651. A writ of mandamus is an extraordinary remedy reserved for "an act amounting to a judicial usurpation of power." In re Patenaude, 210 F.3d 135, 140 (3d Cir. 2000) (internal quotations omitted). The Supreme Court has stated that the writ should not issue unless it is clear that: (1) the petitioner has no other adequate means to attain the desired relief, and (2) the petitioner can show a clear and indisputable right to the relief sought. Kerr v. United States District Court, 426 U.S. 394, 403 (1976). Even where these requirements are satisfied, issuance of the writ is largely discretionary; that is, "[t]he availability of the writ does not compel its exercise." In re Chambers Dev. Co., 148 F.3d 214, 223 (3d Cir. 1998) (internal citations and quotations omitted); see also Patenaude, 210 F.3d at 141.

Appellants cannot meet either of the Kerr requirements. First, appellants have an adequate means, other than the mandamus they seek, to pursue their desired relief. As stated above, appellants are free to raise their arguments with respect to remand after a final adjudication on the merits. Because nothing will prevent this Court from fashioning

9

a remedy, if appropriate, when the question of remand is properly before us, it cannot be said that appellants are now frustrated in all avenues of pursuing their desired relief.

Further, appellants also cannot show that they have a "clear and indisputable right" to remand. Whether remand was warranted was hotly contested below, as it was in this Court. The District Court permitted discovery on the subject. Wyeth presented evidence tending to show that appellants' attorneys had been involved in agreements with phentermine defendants to object to removal, albeit in the context of other Diet Drug cases. Wyeth also presented evidence tending to show that appellants' attorneys had filed other Diet Drug cases naming the phentermine defendants, but had never sought judgment against them. By the same token, appellants presented sworn affidavits from their counsel that they had a good faith intention of pursuing judgment from the objecting defendants. Without deciding the merits of appellants' challenge, we find that there were sufficient facts to create a real issue about the question of remand. That being so, it is impossible for us to say that appellants have the kind of "clear and indisputable right" to remand that warrants a writ of mandamus. Appellate resolution of this debatable issue must await final judgment. Our ruling is consistent with that of other circuits. See, e.g., Neal, 980 F.2d at 749 n.1; Rohrer, 728 F.2d at 863. But see In re Chimente, 79 F.3d 534, 538-39 (6th Cir. 1996); Three J Farms, Inc. v. Alton Box Bd. Co., 609 F.2d 112, 115 (4th Cir. 1979).

To avoid this result, appellants try to analogize PTO 2567 to those cases in which

courts of appeals have exercised mandamus jurisdiction to vacate class certifications based on prejudice to the parties. See Matter of Rhone-Poulenc Rorer Inc., 51 F.3d 1293 (7th Cir. 1995); In re Bendectin Prods. Liab. Litig., 749 F.2d 300 (6th Cir. 1984). Appellant's contention suffers from three defects. First, the practice of exercising mandamus jurisdiction to vacate class certifications has been superseded by Federal Rule of Civil Procedure 26(f), which specifically makes class certification determinations immediately appealable. See Fed. R. Civ. P. 26(f). Second, even before Rule 26(f) was promulgated, issuance of the writ for challenges to class certification determinations was not the practice in this Circuit. See, e.g., In re School Asbestos Litig., 921 F.2d 1338, 1342 (3d Cir. 1990); DeMasi v. Weiss, 669 F.2d 114, 118-19 (3d Cir. 1982).

Most important, however, the pre-Rule 26(f) practice of exercising mandamus jurisdiction to vacate class certifications evolved in recognition of the sometimes practically conclusive effects of class certification determinations. See Rhone-Poulenc, 51 F.3d at 1298-99; Bendectin, 749 F.2d at 304; see also Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 259 F.3d 154, 162 (3d Cir. 2001). Orders granting class certification may expose defendants to enormous liability while orders denying certification may effectively eviscerate the plaintiffs' ability to recover. In such cases, the pressure to settle that is imposed on the dissatisfied party may be grave and, effectively, unreviewable. The irreparable harms facing the defendants in Rhone-Poulenc and Bendectin—crushing liability exposure and massive pressure to settle—are of an entirely

11

different order than any prejudice appellants face here. Appellants in this case need fear nothing other than the prospect of trying their cases in the federal courts, a prospect that can hardly be seen as harmful, much less irreparably so.[4]

### III.

For the foregoing reasons, we will dismiss the appeal for lack of jurisdiction.

---

[4] Appellants' assertion that PTO 2567 may affect thousands of other Diet Drug litigants and is, therefore, prejudicial is unpersuasive. First, the District Court would be obligated to consider each of those litigants' remand requests individually. Second, PTO 2567, to the extent it would exercise any effect, would not preclude future litigants' tort claims, but, at most, would only relegate the litigants to pursuing those claims in federal court. As we found above, relegation to federal court is not a sufficiently prejudicial effect to justify the extraordinary remedy of issuing a writ of mandamus.