[ PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 05-13240

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
OCTOBER 16, 2006
THOMAS K. KAHN
CLERK

D. C. Docket No. 99-01546-CV-T-30-TGW

HARTFORD ACCIDENT AND INDEMNITY COMPANY,
HARTFORD CASUALTY INSURANCE CO.,
TWIN CITY FIRE INSURANCE CO.,

Plaintiffs-Counter-
Defendants-Appellees,

versus

DONALD C. BEAVER,

Defendant-Cross-
Defendant-Counter-
Claimant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(October 16, 2006)**

Before MARCUS, WILSON and COX, Circuit Judges.

MARCUS, Circuit Judge:

This appeal asks whether Florida law requires insurers, Hartford Accident and Indemnity Company, Hartford Casualty Insurance Company, and Twin City Fire Insurance Company (collectively, "Hartford"), to defend their insured, Donald C. Beaver, against a class action suit in which the class has not yet been certified by the state court and the only potentially covered claims are by putative class members. The district court granted summary judgment to Hartford, ruling that the duty to defend under Florida law would not arise pursuant to a general liability policy unless and until a class has been certified. After thorough review of Florida law, we disagree and accordingly reverse and remand for further proceedings consistent with this opinion.

## I.

The relevant facts are these: the appellant, Donald Beaver, was the sole shareholder, owner, director and officer of Brian Center Corporation and Brian Center Management Corporation during the relevant period.[1] The appellees, Hartford, issued a general liability policy to the Defendants with effective coverage dates from November 27, 1987 to November 27, 1992. The terms of the Hartford policy insure the Defendants against damages from bodily injury that

---

[1] Living Centers of America, Inc. and LCA Operational Holding Company subsequently acquired the Brian Center entities. This opinion will refer to Beaver, the Brian Center corporations, and the LCA corporations collectively as the "Defendants."

occur during the policy period. The policy also provides that Hartford has both the right and the duty to defend any suit seeking covered damages.[2]

In 1998, two plaintiffs, Hazel Garrison and the Estate of Cary B. Ayres, filed a putative class action suit (the "Underlying Action") in the Circuit Court of the Thirteenth Judicial Circuit in Hillsborough County, Florida, against the Defendants. The Defendants operated numerous nursing home facilities across the South. The complaint alleged that Ayres resided at one of the nursing homes in

---

[2] The relevant policy provisions provide:

We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend any "suit" seeking those damages. We may at our discretion investigate any "occurrence" and settle any claim or "suit" that may result.

Section I.A.1.a.

This insurance applies to "bodily injury" and "property damage" only if:

(1)     The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory," and
(2)     The "bodily injury" or "property damage" occurs during the policy period.

Section I.A.1.b.

"'Bodily injury' means bodily injury, sickness or disease sustained by a person, including death, resulting from any of these at any time." Section V.3. "'Occurrence' means an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Section V.9. The policy also excludes from coverage "'Bodily injury' or 'property damage' expected or intended from the standpoint of the insured." Section I.A.2.a.

3

Tampa, Florida from June 12, 1986, until his death on December 2, 1995, and that Garrison resided in the same nursing home from October 16, 1993, to November 15, 1997. The operative complaint in the Underlying Action (the "Underlying Complaint") broadly charged that: (1) Beaver and Brian Center Defendants breached fiduciary duties owed to the nursing home residents by failing to provide necessary care, services, and supplies required for their health and well-being; (2) LCA Defendants, after merging with Brian Center Defendants in March 1995, also breached their fiduciary duties to the residents; and (3) Beaver as officer and director of the nursing home corporations, assumed duties to provide residents with adequate care and services, and negligently breached those duties in causing Garrison bodily injury.

Hartford accordingly assumed the defense of the Underlying Action but reserved its right to contest coverage. Hartford then commenced this action on July 2, 1999, in the United States District Court for the Middle District of Florida, seeking a declaratory judgment that there was no coverage or duty to defend the Underlying Action. After some delays caused by bankruptcy proceedings, on January 20, 2004, Hartford moved for summary judgment. Then, on August 3, 2004, Hartford informed the district court that Ayres had settled and was withdrawing as a plaintiff in the Underlying Action. The case proceeded with

Garrison as the sole named plaintiff.

The district court granted Hartford's motion for summary judgment, ruling that the Underlying Complaint did not trigger a duty to defend because the facts in the complaint, "on their face, fail to bring Ms. Garrison's claims within coverage of [Hartford's] policy." Hartford later moved for clarification, asking whether the district court meant that Hartford did not have a duty to defend the Underlying Action based on claims by putative class members rather than by Ms. Garrison. On June 2, 2005, the district court granted Hartford's motion for clarification, concluding that Hartford did not have a duty to defend the Underlying Action. The district court noted the absence of controlling Florida precedent, but held

> that Hartford does not have a duty to defend against the class action allegations contained in the state court complaint until such time as that class is certified pursuant to Florida Rule of Civil Procedure 1.220.
>
> The plain language of Rule 1.220 strongly suggests that a class must be certified before a claim may be maintained on its behalf. Without class certification, there is no class action claim to defend against. The Court is also persuaded by the reasoning of the federal cases holding that the claims of potential class members cannot be aggregated to satisfy the amount in controversy requirement. For example, the Ninth Circuit in Gibson v. Chrysler Corp., 261 F.3d 927, 940 (9th Cir. 2001), noted that "a class action, when filed, includes only the claims of the named plaintiff or plaintiffs. The claims of unnamed class members are added to the action later, when the action is certified as a class under Rule 23."

5

Beaver, alone among the Defendants, filed this appeal from the district court's ruling.

**II.**

We are <u>Erie</u>-bound by Florida law in deciding this diversity case. <u>See</u> <u>Erie R.R. Co. v. Tompkins</u>, 304 U.S. 64 (1938). The case presents an open question of Florida law, but despite the absence of state law deciding the exact issue before us, Florida law yields the conclusion that a duty to defend exists here.

Our starting point is the Florida Supreme Court's decision in <u>Jones v. Florida Ins. Guar. Ass'n</u>, 908 So.2d 435 (Fla. 2005), which succinctly outlined the general parameters of an insurer's duty to defend:

> It is well settled that an insurer's duty to defend its insured against a legal action arises when the complaint alleges facts that fairly and potentially bring the suit within policy coverage. The duty to defend must be determined from the allegations in the complaint.
>
> The duty to defend is of greater breadth than the insurer's duty to indemnify, and the insurer must defend even if the allegations in the complaint are factually incorrect or meritless. Indeed, when the actual facts are inconsistent with the allegations in the complaint, the allegations in the complaint control in determining the insurer's duty to defend. Any doubts regarding the duty to defend must be resolved in favor of the insured.

<u>Id.</u> at 442-43 (internal citations and quotation marks omitted).

These basic principles have been long-established in Florida. <u>See, e.g.,</u>

6

State Farm Fire & Cas. Co. v. CTC Dev. Corp., 720 So.2d 1072, 1077 n.3 (Fla.1998) (acknowledging that "the duty to defend is controlled by the allegations in the complaint against the insured"); Nat'l Union Fire Ins. Co. v. Lenox Liquors, Inc., 358 So.2d 533, 535 (Fla.1977) (same); Biltmore Constr. Co. v. Owners Ins. Co., 842 So.2d 947, 949 (Fla. 2d DCA 2003) (same); Sunshine Birds & Supplies, Inc. v. United States Fid. & Guar. Co., 696 So.2d 907, 910 (Fla. 3d DCA 1997) ("The allegations of the complaint govern the duty to defend even if they may be factually incorrect or without merit, or where . . . there has been a suggestion made that the purported negligent allegations are really allegations of intentional acts in disguise. . . . [W]here a complaint alleges facts that are partially within and partially outside the coverage of an insured's policy, the insurer is not only obligated to defend, but must defend that entire suit." (citations omitted)); Irvine v. Prudential Prop. & Cas. Ins. Co., 630 So.2d 579, 579-80 (Fla. 3d DCA 1993) ("The duty is determined solely by the allegations against the insured, not by the actual facts, nor the insured's version of the facts."); Grissom v. Commercial Union Ins. Co., 610 So.2d 1299, 1307 (Fla. 1st DCA 1992) ("All doubts as to whether a duty to defend exists in a particular case must be resolved against the insurer and in favor of the insured. So long as the complaint alleges facts that create potential coverage under the policy, the insurer must defend the suit.");

7

Baron Oil Co. v. Nationwide Mut. Fire Ins. Co., 470 So.2d 810, 813 (Fla. 1st DCA 1985) ("[T]he duty to defend continues even though it is ultimately determined that the alleged cause of action is groundless and no liability is found within the policy provisions defining coverage.  If the allegations of the complaint leave any doubt regarding the duty to defend, the question must be resolved in favor of the insured requiring the insurer to defend.").

Thus, the central inquiry in a duty to defend case is whether the complaint "alleges facts that fairly and potentially bring the suit within policy coverage." Jones, 908 So.2d at 443.   Since the parties agree that Hartford faces potential liability only if a class is certified, we are obliged to ask whether the Underlying Complaint alleges facts that fairly and potentially support class certification.

Florida Rule of Civil Procedure 1.220 sets forth state law enumerating the prerequisites for class certification:

> Before any claim or defense may be maintained on behalf of a class by one party or more suing or being sued as the representative of all the members of a class, the court shall first conclude that (1) the members of the class are so numerous that separate joinder of each member is impracticable, (2) the claim or defense of the representative party raises questions of law or fact common to the questions of law or fact raised by the claim or defense of each member of the class, (3) the claim or defense of the representative party is typical of the claim or defense of each member of the class, and (4) the representative party can fairly and adequately protect and represent the interests of each member of the class.

8

Fla. R. Civ. P. 1.220(a).  See also Chase Manhattan Mortg. Corp. v. Porcher, 898 So.2d 153, 156 (Fla. 4th DCA 2005) ("The movant for class certification bears the burden of establishing all the requirements of Florida Rule of Civil Procedure 1.220.").

Fully eight pages of the Underlying Complaint detail the factual allegations supporting class certification.  The substance of those allegations are: (1) the class is too numerous for separate joinder, as the class will likely include upward of 6,000 individuals who are geographically dispersed throughout Florida, North Carolina, South Carolina, Virginia, and Georgia; (2) questions of law and fact that are common to the class predominate over individual questions: the terms of the contracts between nursing home residents and the nursing homes; the care, services, and supplies to which putative class members were entitled; the decrease in the quality of care putative class members actually received;  the value of the care, services and supplies to which putative class members were entitled; the putative class members' need for a safe and sanitary environment, personal attendance and custodial care, and access to appropriate health care; the pattern of understaffing the nursing homes; facts supporting defendants' denials and affirmative defenses;  the law of negligence and fiduciary duty; and the proper

9

measure of damages; (3) the named plaintiff's claims are <u>typical</u> of class members' claims; thus, for example, the named plaintiff and all putative class members: were residents of the nursing homes, entered similar contracts with the nursing homes, paid Defendants in exchange for certain care, services and supplies, were owed the same duty of care by Defendants, and received the same inadequate treatment; and (4) the named plaintiff is committed to prosecuting this action and will <u>adequately represent</u> and protect the interests of the class, as evidenced by her retention of attorneys who are experienced in complex litigation, especially nursing home litigation.

The factual averments bearing on class certification are detailed and extensive. Thus, we are satisfied that the Underlying Complaint "alleges facts that fairly and potentially bring the suit within policy coverage," <u>Jones</u>, 908 So.2d at 443. Nothing in Florida law even remotely suggests that the potential for coverage created by a class action is qualitatively different from the potential for coverage created by an individual action. Florida's courts have uniformly said that a suit alleging facts that fairly and potentially bring the suit within policy coverage triggers an insurer's duty to defend. That standard is readily met in this case.

Hartford, nevertheless, offers two reasons why its duty to defend should remain inchoate unless and until a state court has certified the class: first, absent

10

class members simply are not a part of the lawsuit until a class is certified, and therefore no duty can arise to defend against claims by non-parties; and second, claims by putative class members are too remote and speculative to trigger the duty to defend. We are unpersuaded.

As a doctrinal matter, Hartford's argument lacks meaningful support in Florida law. Hartford cites several authorities -- Fla. R. Civ. P. 1.220(a) ("Before any claim or defense may be maintained on behalf of a class . . . the court shall first conclude" that class certification is appropriate); Gibson v. Chrysler Corp., 261 F.3d 927 (9th Cir. 2001) (holding that the value of unnamed class members' claims cannot satisfy the amount-in-controversy requirement of 28 U.S.C. § 1367); Lutz v. Protective Life Ins. Co., 328 F. Supp. 2d 1350, 1358 (S.D. Fla. 2004) (holding that "the claims of unnamed class members cannot be used in computing the amount in controversy") -- for the unremarkable proposition that absent class members are not part of a lawsuit until certification. But these authorities are not remotely persuasive here because they concern procedural and jurisdictional matters completely unrelated to Florida's duty-to-defend law and conflict with a Florida Supreme Court case, Johnson v. Plantation General Hosp., Ltd., 641 So.2d 58, 60 (Fla. 1994), holding that putative class members' claims can be aggregated to meet jurisdictional requirements. Indeed, Hartford cites no authority

11

suggesting that the general rule enunciated in Jones -- that the duty to defend arises when the complaint alleges facts that fairly and potentially bring the suit within policy coverage -- is somehow inapplicable here. The only case we or the parties have located that is directly on point rejected the very argument Hartford asserts here, holding instead that allegations of personal injury against putative class members actually triggered an insurer's duty to defend, notwithstanding that the class had not yet been certified. See LensCrafters, Inc. v. Liberty Mut. Fire Ins. Co., 2005 WL 146896 (N.D. Cal. 2005).

Nor does Hartford successfully distinguish LensCrafters by noting that it was decided under California law, which imposes the duty to defend in cases where the complaint might be amended to include a potentially covered claim. The LensCrafters court did not rely on the possibility of amendment to conclude that claims by putative class members could trigger the duty to defend; it relied on the fact that the complaint alleged putative class members suffered bodily injury, which was potentially within policy coverage. Id. at *12 n.15.

Second, Hartford would have us ignore this basic truth about class action litigation: the fight over class certification is often the whole ball game. Indeed, the centrality of certification to the outcome of litigation prompted enactment of Federal Rule of Civil Procedure 23(f), which allows for interlocutory appeal of

12

class certification orders.  See Fed. R. Civ. P. 23(f) advisory committee's notes accompanying 1998 amendments (observing that "[a]n order denying certification may confront the plaintiff with a situation in which the only sure path to appellate review is by proceeding to final judgment on the merits of an individual claim that, standing alone, is far smaller than the costs of litigation" while "[a]n order granting certification . . . may force a defendant to settle rather than incur the costs of defending a class action and run the risk of potentially ruinous liability").  The federal courts, too, have frequently acknowledged the high stakes involved in class certification decisions.  See, e.g., Coopers & Lybrand v. Livesay, 437 U.S. 463, 476 (1978) ("Certification of a large class may so increase the defendant's potential damages liability and litigation costs that he may find it economically prudent to settle and to abandon a meritorious defense."); Prado-Steiman ex rel. Prado v. Bush, 221 F.3d 1266, 1274 (11th Cir. 2000) ("[E]ven ordinary class certification decisions by their very nature may radically reshape a lawsuit and significantly alter the risk-benefit calculation of the parties . . . ."); see also  In re Diet Drugs Prod. Liab. Litig., 93 F.App'x 345, 350 (3d Cir. 2004) ("Orders granting class certification may expose defendants to enormous liability while orders denying certification may effectively eviscerate the plaintiffs' ability to recover."); In re Visa Check/MasterMoney Antitrust Litig., 280 F.3d 124, 145 (2d

13

Cir. 2001) ("The effect of certification on parties' leverage in settlement negotiations is a fact of life for class action litigants."). The overwhelming importance of class certification to the ultimate resolution of the case militates strongly against leaving the insured without a defense until after a decision on class certification.

Moreover, Hartford has failed to acknowledge that the broad language found in the policy unambiguously says that the right and duty to defend are triggered by the same event -- commencement of a suit alleging covered damages -- so if there were no <u>duty</u> to defend, there also would be no <u>right</u> to defend.[3] Thus, the rule Hartford advocates would not only deny an insured the defense it contracted for, but also would lock insurers out of the litigation until <u>after</u> the critically important issue of class certification had been decided. Although the insurer's right to defend is not at issue in this case -- Beaver clearly wants Hartford to assume the defense -- in other cases where the insurer faces probable class certification and potentially enormous liability, it would lack the right to defend the suit and protect its interests until after a critically important issue has already

---

[3] Again, section I.A.1.a. of the Hartford policy provides: "We will pay . . . damages . . . to which this insurance applies.  <u>We will have the right and duty to defend any 'suit' seeking those damages.</u>  We may at our discretion investigate any 'occurrence' and settle any claim or 'suit' that may result." (emphasis added).

14

been litigated. Such a rule would poorly serve insurers and insureds alike. We can find nothing in Florida law nor in the policy language yielding that conclusion.

Finally, Hartford says that basing a duty to defend on the claims of putative class members would somehow be "impractical and uncertain" since the class may never be certified. Again, Hartford fails to cite any supporting authority and ignores clear Florida case law holding that a duty to defend arises despite uncertainty as to the merits or factual accuracy of a claim. Jones, 908 So.2d at 443; Sunshine Birds & Supplies, Inc. v. United States Fid. & Guar. Co., 696 So.2d 907, 910 (Fla. 3d DCA 1997) ("The allegations of the complaint govern the duty to defend even if they may be factually incorrect or without merit, or where . . . there has been a suggestion made that the purported negligent allegations are really allegations of intentional acts in disguise."). If the duty to defend arises in spite of the uncertainty and impracticality of defending wholly meritless individual claims, we think it equally clear that the duty to defend is not defeated by some uncertainty as to the merits of a class certification. The Florida courts have repeatedly explained that the duty to defend arises when a complaint fairly and potentially asserts a covered claim. See, e.g., Jones, 908 So.2d at 443; Grissom v. Commercial Union Ins. Co., 610 So.2d 1299, 1307 (Fla. 1st DCA 1992) ("So long

15

as the complaint alleges facts that create potential coverage under the policy, the insurer must defend the suit."); Baron Oil Co. v. Nationwide Mut. Fire Ins. Co., 470 So.2d 810, 813 (Fla. 1st DCA 1985) (" If the allegations of the complaint leave any doubt regarding the duty to defend, the question must be resolved in favor of the insured requiring the insurer to defend." (emphasis added)). The likelihood that a plaintiff will prevail in its covered claims or that a class will be certified does not enter into the calculus. See id. In this case the factual averments supporting class certification are serious and substantial.

Several conclusions emerge from this: (1) a straightforward application of the Jones rule yields the result that the class members' claims potentially bring the Underlying Action within policy coverage; (2) in spite of the policy's unambiguous language, the district court's ruling would leave insureds without representation during the most critical period of a class action lawsuit alleging potentially covered claims; (3) the district court's interpretation of the policy would also deprive insurers of the right to defend against class certification in suits for which their potential liability is enormous; and (4) no authority found in Florida law or, for that matter, anywhere else, has concluded that claims by putative class members are somehow insufficient to trigger an insurer's duty to defend. Hartford has failed to rebut any of this. In short, we hold that under

16

Florida law and the terms of this policy, Hartford has a duty to defend -- the Underlying Complaint has alleged sufficient facts that <u>fairly</u> and <u>potentially</u> bring the suit within the ambit of the policy's coverage.

### III.

Alternatively, Hartford suggests that we should affirm the district court's entry of final summary judgment because the Underlying Complaint alleges only <u>intentional</u> conduct, which the policy's terms exclude from coverage. The Hartford policy provides coverage for bodily injury caused by "an accident" and excludes coverage for bodily injury that is "expected or intended from the standpoint of the insured."[4] The bodily injury alleged in the Underlying Complaint, according to Hartford, is no accident because the negligence count remains a claim grounded on the Appellant's alleged intentional scheme to defraud creditors and nursing home residents and to maximize profits. We remain unpersuaded.

The Florida Supreme Court has held that where, as here, "the term 'accident' in a liability policy is not defined, the term, being susceptible to varying

---

[4] The relevant policy provisions say that a covered "'occurrence' means an accident, including continuous or repeated exposure to substantially the same general harmful conditions," section V.9., and specifically exclude coverage for "'Bodily injury' . . . expected or intended from the standpoint of the insured." Section I.A.2.a.

interpretations, encompasses not only 'accidental events,' but also injuries or damage neither expected nor intended from the standpoint of the insured." State Farm Fire & Cas. Co. v. CTC Development Corp., 720 So.2d 1072, 1076 (Fla. 1998). "When an insurer relies on an exclusion to deny coverage, it has the burden of demonstrating that the allegations of the complaint are cast solely and entirely within the policy exclusion and are subject to no other reasonable interpretation. Exclusionary clauses are generally disfavored." Northland Cas. Co. v. HBE Corp., 160 F. Supp. 2d 1348, 1359 (M.D. Fla. 2001) (internal citations omitted). Moreover, Florida courts construe ambiguity in policy language liberally in favor of the insured and strictly against the insurer. Id.; State Farm, 720 So.2d at 1076.

The Underlying Complaint alleges that Beaver "breach[ed] . . . [his] dut[y] to provide appropriate care and services," which caused the plaintiff and members of the class to suffer bodily injury. This is the language of negligence. Based on the policy language, it is clear that coverage for bodily injury is excluded only if the injury was "expected or intended from the standpoint of the insured." An injury is not excluded from coverage merely because, as here, the complaint arguably may also allege that the defendants' conduct was intentional. See Grissom, 610 So.2d at 1307 (holding that the unintended damage caused by

18

intentional conduct constitutes an accident). Hartford elides this distinction and says the coverage exclusion applies because "[t]he entire state action is based upon an intentional scheme to maximize profits."

The Florida Supreme Court has observed, however, that "[i]n many cases the question of whether the injury or damages were unintended or unexpected will be a question of fact; in some cases, the question will be decided as a matter of law, such as in cases where the insured's actions were so inherently dangerous or harmful that injury was sure to follow." State Farm, 720 So.2d at 1076. And the duty to defend arises even where "there has been a suggestion made that the purported negligent allegations are really allegations of intentional acts in disguise. . . . [W]here a complaint alleges facts that are partially within and partially outside the coverage of an insured's policy, the insurer is not only obligated to defend, but must defend that entire suit." Sunshine Birds & Supplies, Inc. v. United States Fid. & Guar. Co., 696 So.2d 907, 910 (Fla. 3d DCA 1997) (citations omitted). Thus, so long as the complaint can reasonably be read as alleging that the class members' injuries were negligently caused, even if it also may arguably be read as alleging that the injuries were intentionally caused, the doubt must be resolved in favor of finding a duty to defend. See id.

Hartford says that the Underlying Complaint's negligence claim, contrary to

19

its styling, really alleges that Hartford expected or intended to inflict bodily injury on nursing home residents. Hartford relies principally on Northland v. HBE Corp., which looked beyond the complaint's labeling of conduct as "reckless" to hold that the injury alleged was caused intentionally. 160 F. Supp. 2d 1348 (M.D. Fla. 2001). That case, though, was markedly different from this one. Northland involved allegations that a hotel intentionally discriminated against African-Americans in renting rooms. The complaint "allege[d] that . . . [the defendant hotel] implemented discriminatory polices [sic] and practices . . . and carried out those polices [sic] under the direction of HBE's highest officials for the specific purpose of discouraging black persons from seeking accommodations at the hotel." Id. at 1361-63 (emphasis added). The court concluded that labeling such conduct "reckless" did not bring the claim within policy coverage, because the allegations clearly belied such a label. Moreover, the Northland court decided the issue of an insurer's duty to indemnify, which is undeniably narrower than an insurer's duty to defend. See, e.g., U.S. Fire Ins. Co. v. Hayden Bonded Storage Co., 930 So.2d 686, 691 (Fla. 4th DCA 2006) ("It is clear that an insurer's duty to defend is broader than its duty to indemnify."); Rad Source Techs., Inc. v. Colony Nat. Ins. Co., 914 So.2d 1006, 1007 (Fla. 4th DCA 2005) (same).

Hartford urges that "a corporate policy of intentionally withholding nursing

20

care can be expected to cause harm as surely as a corporate policy of discrimination, [and] the intent to cause harm can be inferred in the instant case, just as it was inferred in <u>Northland</u>." This is simply wrong. The complaint in <u>Northland</u> alleged that the defendant implemented a corporate policy "for the <u>specific purpose</u> of discouraging black persons from seeking accommodations at the hotel," so the intent to cause harm was apparent from the face of the complaint. Here, the most we can find in the complaint is the allegation that Beaver's wrongful acts were committed with the ultimate objective of maximizing profit. This hardly eviscerates a claim sounding in negligence. Nowhere does the Underlying Complaint allege that Beaver acted with the objective of causing residents bodily injury, and it does not allege conduct that, as a matter of law, "w[as] so inherently dangerous or harmful that injury was sure to follow." <u>State Farm</u>, 720 So.2d at 1076. Thus, mindful that "any doubt regarding the duty to defend . . . must be resolved in favor of. . . requiring the insurer to defend," <u>Baron Oil Co.</u>, 470 So.2d at 814, we remain convinced that the Underlying Complaint alleges facts that fairly and potentially bring the claims within policy coverage. Accordingly, we reverse the district court's summary judgment order and conclude that Hartford has a duty to defend Beaver in the Underlying Action.

**REVERSED.**

21