[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 22-10227

Non-Argument Calendar

_____

GLOBAL TRAVEL INTERNATIONAL, INC.,

Plaintiff-Appellant,

*versus*

MOUNT VERNON FIRE INSURANCE COMPANY,
A foreign corporation,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 6:21-cv-00716-GAP-GJK

_____

Before WILSON, LUCK, and BRASHER, Circuit Judges.

PER CURIAM:

This is a duty to defend insurance dispute brought by the insured, Global Travel International, Inc. (GTI), seeking a declaration that Mount Vernon Fire Insurance Company (Mt. Vernon) has a duty to defend GTI in a breach of contract arbitration proceeding. GTI appeals from the district court's grant of summary judgment in favor of Mt. Vernon. The order held that Mt Vernon had no duty to defend GTI because the claim fell within a relevant policy exclusion (exclusion Q). An appeal ensued. At issue now is whether the district court erred by holding that the amended arbitration demand's language was akin to "conclusory buzz words" that do not trigger coverage.

After careful review of the policy and the allegations in the amended arbitration demand, we affirm the district court's holding for the reasons set out below.

## I.    Background

### A. The Policy

GTI is a travel agency that provides hotel reservation and other travel-related services to its customers, primarily over the internet. Mt. Vernon insured GTI under a professional errors and

omissions liability insurance policy (the policy).  At all relevant times, Mt. Vernon insured GTI under the policy.

The Parties agree that coverage part A is the relevant coverage part for this dispute.  Coverage part A states that "the **Company** will pay on behalf of an **Insured, Loss** and **Claim Expenses** resulting from a **Claim** . . . such **Claim** must be reported to the **Company** . . . ."  Doc. 1-2 at 39 (emphasis in original).  Exclusion Q to coverage part A provides the condition that:

> The **Company** shall not be liable for **Loss** or **Claim Expenses** on account of any **Claim** or **Cyber Event**:
>
> …
>
> Q. arising out of, directly or indirectly resulting from or in consequence of or in any way involving actual or alleged contractual liability, obligation, warranty, representation or guarantee including:
>
> 1. any breach of a written contract…
>
> Except this exclusion shall not apply to:
>
> …
>
> (3) unintentional breach of a written contract resulting from the rendering of or failure to render **Professional Services**.

Doc. 1-2 at 24, 26 (emphasis in original).

## B. The Underlying Arbitral Demand

GTI entered into a Merchant Card Processing Agreement with Qualpay, Inc. (Qualpay), a credit card processor, to help carry out GTI's business as a travel agent. Under the agreement, Qualpay "agreed to process GTI's credit and debit card transactions, and GTI, as Qualpay's merchant, agreed to pay Qualpay certain fees and expenses associated with that processing activity," in addition to reimbursing Qualpay for "chargebacks."[1] Doc. 1-6 at 6.

In February 2019, GTI discovered that an employee responsible for reconciling financial transactions had been using his position to engage in fraudulent activities that resulted in approximately $1.1 Million being embezzled from company funds. Consequently, GTI was left unable to fulfill many financial commitments, including its payment obligations to Qualpay under the Processing Agreement. Qualpay began arbitration proceedings for breach of contract. The demand first alleged in paragraph 11 that

---

1 The Merchant Card Processing Agreement describes a chargeback as an occurrence where "a customer contacts the bank issuing a credit or debit card and asks that a sales transaction be reversed… Upon the initiation of a chargeback by a consumer, funds that were previously paid to a merchant (such as GTI) for a transaction are debited back from its processor (here, Qualpay), leaving the processor to collect the chargeback from its merchant customer." Doc. 1-6 at 6.

22-10227                Opinion of the Court                5

GTI[2] and its guarantor have not paid Qualpay for chargebacks or fees as required under their agreement, which left Qualpay "holding the bag" for more than $300,000.  Doc. 1-6 at 7.

Later, Qualpay filed an amended demand that changed only paragraph 11; the amendment added that: "[u]pon information and belief, these breaches of contract were not reflections of intentional obstinacy by GTI or based upon a denial that the amounts are due, but rather were unintentional and caused by an embezzlement event within GTI that left it unable to pay its debts and obligations."  Doc. 1-6 at 2 (the amended language).

GTI notified Mt. Vernon after each demand, requesting that they provide a defense under the policy.  Both times, Mt. Vernon declined coverage, concluding that the claims asserted against GTI were not covered under the policy.

GTI subsequently filed an action seeking declaratory judgment that Mt. Vernon must defend GTI in the arbitration proceeding.  The parties cross motioned for summary judgment on the issue.  The district court granted summary judgment for Mt. Vernon, finding that the amended arbitration demand falls within Exclusion Q.  GTI timely appealed.

## II.    Discussion

---

[2] The initial demand incorrectly stated that a demand for payment was made upon Qualpay.  The language is corrected in the amended demand to reflect that demand for payment was made to GTI and its guarantor.

On appeal, GTI argues that the amended language is enough to place the arbitration demand within the exception to Exclusion Q and trigger the duty to defend.  Mt. Vernon argues that the district court was correct because Qualpay's claim is based upon an alleged breach of contract, and simply calling GTI's alleged breach "unintentional," as the amended language does, amounts to a conclusory 'buzz word.'

We review a district court's order granting summary judgment de novo.  *Huff v. DeKalb County*, 516 F.3d 1273, 1277 (11th Cir. 2008).  Construction of an insurance contract is a question of law to be reviewed de novo.  *Technical Coating Applicators, Inc. v. United States Fid. & Guar. Co.*, 157 F.3d 843, 844 (11th Cir. 1998).  In this diversity case, the parties have agreed that Florida substantive law applies.  *See Provau v. State Farm Mut. Auto. Ins.*, 772 F.2d 817, 819 (11th Cir. 1985).  In Florida, ordinary contract principles govern the interpretation and construction of insurance policies.  *Atlantic Cas. Ins. v. Innovative Roofing Sys., Inc.*, 411 F. Supp. 3d 1287 (M.D. Fla 2019).  "[T]he central inquiry in a duty to defend case is whether the complaint 'alleges facts that fairly and potentially bring the suit within policy coverage.'" *Hartford Accident & Indem. Co. v. Beaver*, 466 F.3d 1289, 1292 (11th Cir. 2006) (quoting *Jones v. Fla Ins. Gar. Ass'n.*, 908 So. 2d 435, 442–43 (Fla. 2005) (per curiam)); *see also State Farm Fire & Cas. Co. v. Steinberg*, 393 F.3d 1226, 1230 (11th Cir. 2004) ("Under Florida law, the general rule is that an insurance company's duty to defend an insured is determined solely from the allegations in the complaint against the

insured, not by the true facts of the cause of action against the insured, the insured's version of the facts or the insured's defenses."). But "conclusory 'buzz words' unsupported by factual allegations are not sufficient to trigger coverage." *Steinberg*, 393 F.3d at 1230 (citing *Amerisure Ins. v. Gold Coast Marine Distributors, Inc.*, 771 So.2d 579, 582 (Fla. Dist. Ct. App. 2000)). In addition, inferences are insufficient to trigger coverage. *Fun Spree Vacations, Inc. v. Orion Ins.*, 659 So. 2d 419, 421–22 (Fla. Dist. Ct. App. 1995).

The threshold question in this case is whether the amended language sufficiently alleges unintentional conduct. The district court held that it does not, but instead alleges only that GTI breached the Qualpay contract because it could not afford to pay the fees due under the agreement—a statement that amounts to a conclusory 'buzz word.' We agree.

The parties agree that GTI had a contractual obligation to pay Qualpay for fees associated with the service provided, and that Qualpay initiated the underlying action as a result of the breach of that obligation. The amended language creates, at most, an inference into the circumstances that created the breach. Qualpay's "belief" that an "embezzlement event" caused the breach, standing alone, is not enough to allege an unintentional breach of contract. As the district court noted, Qualpay needed to point to an alleged fact that would show the breach is unintentional. Here, the amended demand alleges only that Qualpay *believes* the breach was unintentional.

Additionally, the use of the word 'unintentional' is not enough to bring the claim within coverage because, without facts to support its claim, it is a conclusory buzz word meant to unlock coverage. For these reasons, the amended demand does not allege facts to support Qualpay's belief that an embezzlement event resulted in an unintentional breach of contract.

Because the underlying action seeks to recover for breach of contract, and the amended language amounts to a conclusory 'buzz word' that infers Qualpay's subjective belief, we **AFFIRM.**

**AFFIRMED.**