696 So.2d 907 (1997)
SUNSHINE BIRDS AND SUPPLIES, INC., Ignacio Perea, Sr., Maria Perea, and Domingo Sanchez, Appellants,
v.
UNITED STATES FIDELITY AND GUARANTY COMPANY and Fidelity and Guaranty Insurance Underwriters, Inc., Appellees.
No. 96-1351.
District Court of Appeal of Florida, Third District.
July 2, 1997.
Stephens, Lynn, Klein & McNicholas, P.A., and Robert M. Klein and Marlene S. Reiss, Miami, and Gary Khutorsky, Miami, for appellants.
Schabacker Simmons & Dunlap and Judith W. Simmons, Tampa, for appellees.
Before GERSTEN, GREEN and FLETCHER, JJ.
*908 GREEN, Judge.
Appellants, Sunshine Birds and Supplies, Inc., Ignacio Perea, Sr., Maria Perea, and Domingo Sanchez all appeal from an adverse summary judgment entered in a declaratory action instituted by appellees, United States Fidelity and Guaranty Company and Fidelity and Guaranty Insurance Underwriters, Inc. (collectively "USF & G"). In entering summary judgment in favor of USF & G, the lower court essentially determined that based upon certain policy exclusions, USF & G owes no duty of defense (and hence, no indemnification) to the appellants in two underlying tort actions. We disagree and reverse for the reasons which follow.

I

RELEVANT POLICY TERMS
Appellant, Sunshine Birds and Supplies, Inc. ("Sunshine"), is a bird supply business which is located in an industrial district of Dade County. Appellants, Ignacio Perea, Sr., Maria Perea and Domingo Sanchez, are its officers and/or directors. The business entity and the individual appellants are the named insureds on a commercial general liability policy written and issued by USF & G. According to the relevant terms of the policy, USF & G has a duty to defend and indemnify the appellants for any damages they are legally obligated to pay as damages because of "bodily injury" to which the insurance applies. The policy further provides that it applies to bodily injury only if "the bodily injury ... is caused by an `occurrence' that takes place in the `coverage territory.'" "Bodily injury" is defined in the policy as "bodily injury, sickness or disease resulting from any of these at any time." "Occurrence" is further defined in the policy as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Specifically excluded from coverage in the policy is "bodily injury expected or intended from the standpoint of the insured."

UNDERLYING COMPLAINTS
Two separate lawsuits have been filed against the appellants by the parents of two minor children. In each of the complaints, it has been alleged that the minors were sexually molested by two of Sunshine's employees on the business premises during non-business hours.[1] Each of the complaints set forth two counts sounding in negligence, one against the business entity itself, and the other against the individual appellants collectively. It is alleged in each of these complaints, among other things, that prior to the unlawful acts complained of, the appellants knew or alternatively, should have known that their two employees[2] had committed previous lascivious and unlawful acts against other minors at the business; that despite the appellants' actual or constructive knowledge of their employees' aberrant propensities and their perverse use of the business premises, the appellants failed to take reasonable precaution to prevent the further victimization of young children; and that the appellants had unlawfully permitted the two employees to establish living quarters on the business premises which had afforded them unrestricted access to the facility for their use in a perverse and illegal manner after business hours.[3] Both complaints further allege *909 that the appellants were negligent in hiring, retaining, training, and supervising their employees as well as negligent in failing to investigate, suspend, and/or terminate the two employees upon their actual notice or reasonable suspicion that these employees were involved in sexual abuse upon minors.[4]

II
Based upon these allegations, USF & G initially agreed to defend the appellants in both of these underlying actions subject to a complete reservation of its rights to dispute coverage under the policy. Subsequently, USF & G instituted the declaratory action below for a determination of its rights and potential obligations under the policy. Cross-motions for summary judgment were filed by both sides. USF & G essentially took the position that it owed no duty of defense because the allegations of the appellants' actual knowledge of the sexual molestation on their business premises precluded such acts from being an "occurrence" under the policy and that the purported allegations of negligence were only a "blatant attempt to reach the deep pockets of the insurer for uninsurable intentional acts." The trial court granted USF & G's motion finding that there was no duty to defend or indemnify. This appeal followed.

III
In concluding that USF & G owed no duty of defense to appellants, the trial court apparently relied solely upon those allegations of actual knowledge by the appellants and found that no "occurrence" had been triggered. In so doing, the court completely ignored the alternatively pled allegations that appellants had only constructive knowledge of prior sexual abuse on the business premises. We think that this was error and completely runs afoul of well-established legal precedent regarding an insurer's duty to defend.
First of all, it is a well-settled rule that the allegations of the underlying complaint control an insurer's defense obligations.
The duty of an insurer to defend is determined solely by the allegations of the complaint against the insured not by the actual *910 facts, nor the insured's version of the facts or the insured's defenses.
Marr Invs., Inc. v. Greco, 621 So.2d 447, 449 (Fla. 4th DCA 1993) (quoting Reliance Ins. Co. v. Royal Motorcar Corp., 534 So.2d 922, 923 (Fla. 4th DCA 1988), rev. denied, 544 So.2d 200 (Fla.1989)). The allegations of the complaint govern the duty to defend even if they may be factually incorrect or without merit, National Union Fire Ins. Co. v. Lenox Liquors, Inc., 358 So.2d 533, 536 (Fla. 1977); Aetna Cas. and Sur. Co., Inc. v. Miller, 550 So.2d 29, 30 (Fla. 3d DCA 1989); Reliance Ins. Co. v. Royal Motorcar Corp., 534 So.2d 922, 923 (Fla. 4th DCA 1988); Logozzo v. Kent Ins. Co., 464 So.2d 605, 606-07 (Fla. 3d DCA 1985); Federal Ins. Co. v. Applestein, 377 So.2d 229, 232-33 (Fla. 3d DCA 1979), or where as here, there has been a suggestion made that the purported negligent allegations are really allegations of intentional acts in disguise. See Marr Inv. v. Greco.[5]
It is further clear in this area of the law that where a complaint alleges facts that are partially within and partially outside the coverage of an insured's policy, the insurer is not only obligated to defend, but must defend that entire suit. See Grissom v. Commercial Union Ins., Co., 610 So.2d 1299, 1307 (Fla. 1st DCA 1992) (where complaint involves allegations of negligent and intentional acts, and policy excludes only intentional acts but covers negligence, insurer must defend entire suit), rev. denied, 621 So.2d 1065 (Fla.1993); Metro Dade County v. Florida Aviation Fueling Co., 578 So.2d 296, 298 (Fla. 3d DCA), rev. denied, 589 So.2d 290 (Fla.1991); American Hardware Mut. Ins. Co. v. Miami Leasing and Rentals, Inc., 362 So.2d 28, 28-29 (Fla. 3d DCA 1978). Moreover, any doubt about an insurer's duty to defend must be resolved in favor of the insured. See Grissom, 610 So.2d at 1307; Florida Ins. Guar. Ass'n. v. Giordano, 485 So.2d 453, 456 (Fla. 3d DCA 1986); Baron Oil Co. v. Nationwide Mut. Fire Ins. Co., 470 So.2d 810, 814 (Fla. 1st DCA 1985).
With these established guiding principles in mind, we must determine whether an "occurrence" as defined in USF & G's policy has been triggered by the allegations of the underlying complaints. As stated earlier, "occurrence" is defined in the USF & G policy as an "accident." According to Webster's New Collegiate Dictionary, 6 (8th ed.1981), "accident" is defined as:
[A]n event occurring by chance or arising from unknown causes ... 2a: an unfortunate event resulting from carelessness, unawareness, ignorance, or a combination of causes b: an unexpected happening causing loss or injury which is not due to any fault or misconduct on the part of the person injured but from the consequences of which he may be entitled to some legal relief....
USF & G first argues that based upon our decision in State Farm Fire & Casualty Co. v. Compupay, Inc., 654 So.2d 944 (Fla. 3d DCA), rev. denied, 662 So.2d 341 (Fla.1995), no "occurrence" was triggered by the complaints by virtue of those allegations in the complaints that the appellants had prior knowledge of their employee's proclivities to engage in child molestation, but failed to take remedial actions to prevent the same.
In Compupay the insured employer, as the appellants in this case, was sued for the negligent retention of one of its male supervisors who allegedly was known by the employer to sexually harass female employees. The gravamen of the Compupay allegations, however, were that at all times the insured employer had actual, rather than constructive knowledge, of the intentional wrongs being perpetrated against the plaintiff/victim by the male supervisor and took no actions to address the same.[6] According to the complaint, *911 the plaintiff had allegedly repeatedly lodged specific complaints to the employer about the harassment and, despite such complaints, the employer had acted with deliberate indifference to the situation. In finding that the insurer had no duty to defend, this court first noted that the insurance policy specifically excluded the claims of the insured's employees. See Id. at 947. More importantly, however, our court concluded that the employer's alleged history of deliberate indifference to a known wrong being perpetrated against the plaintiff foreclosed the employer's contention that the harassment was "unexpected" and hence, an "occurrence" under the policy. See Id.
The clear distinction between Compupay and this case is that the plaintiffs/victims in the underlying complaints of this case plead alternatively that the insured employers had actual or constructive knowledge of their employees' proclivity in general to molest young children. We think that a fair reading of the allegations of these complaints suggests that the appellants either actually knew of the potential for child abuse on the business premises and acted indifferently to this situation, or alternatively, the appellants had no actual knowledge of the abuse but with the exercise of due care, could have learned of the same and taken remedial steps to prevent the victimization of the minor plaintiffs. If the evidence ultimately adduced during discovery and/or trial substantiates the former allegations, under Compupay, this would not qualify as an "occurrence" or insurable risk under the policy. Under this circumstance, USF & G would owe no duty of indemnification. On the other hand, however, if the evidence establishes the alternatively pled latter allegations, we think that an "occurrence" would be triggered under the policy for which USF & G would be liable for indemnification.[7] Hence, where as here, there are alternative allegations which would bring these suits both within and outside of the policy's coverage, we conclude that the trial court erred in finding that USF & G had no duty to defend the two underlying actions in their entirety. See Grissom, Metro Dade County and American Hardware Mut. Ins. Co..
Finally, although wholly unnecessary for the disposition of the issue before us, we briefly address USF & G's suggestion that the sole motivation for the inclusion of the negligence allegations in the two complaints is to reach the insurer's unlimited resources. Even if we assume for the moment that these employers had actual knowledge of their employees' general proclivities for child molestation when they hired them, it does not necessarily or logically follow that the employers have reason to expect or anticipate such aberrant behavior to be perpetuated at their business. Sunshine, after all, is located *912 in an industrial district, an area not generally expected to be frequented by children in the ordinary course of events. Sunshine is not the type of business which caters its products or services to the needs or interests of children such as day care centers or amusement parks. Simply put, based upon the allegations of the complaints, there was no reason for the appellants to expect their employees to frequently be brought into contact with children by virtue of their employment at Sunshine. Thus, contrary to USF & G's arguments, we think there may be a reasonable basis for the alternatively pled negligence allegations in the underlying complaints.

IV
USF & G alternatively argues that the lower court's order should be affirmed because these complaints are barred by the intentional acts exclusion in the policy. In support of this position, USF & G cites to Landis v. Allstate Ins. Co., 546 So.2d 1051 (Fla.1989). We think that Landis is factually distinguishable from this case and USF & G's reliance thereon is misplaced.
Landis, unlike this case, involved a situation where the insureds themselves were sued for sexually abusing children in their home/day care center. Although the allegations in the underlying complaint were couched in terms of negligence, it was crystal clear from the gravamen of the action that the plaintiffs were suing for damages resulting from the intentional acts of the insureds themselves. In concluding, among other things,[8] that the intentional acts exclusion of the policy precluded coverage, the court reasoned simply that:
To state that a child molester intends anything but harm and long-term emotional anguish to the child defies logic. The petitioners argue that Ileana Fuster's [an insured] diminished mental capacity prevented her from forming any specific intent to harm the children. Nonetheless, we believe that specific intent to commit harm is not required by the intentional acts exclusion. Rather, all intentional acts are properly excluded by the express language of the homeowners policy.
546 So.2d at 1053. We construe this to mean that there can be no cause of action for negligent sexual abuse against the actual abuser as a matter of law. Thus, the plaintiffs in Landis could not couch the alleged intentional acts of the insureds in terms of negligence in order to escape the intentional acts exclusion in the policy.
That is not, however, the situation presented in this case. It has never been alleged in either of the underlying complaints that the insureds themselves were ever involved in the sexual abuse of any minors.[9] The sole basis for the insureds' alleged liability in these cases is their negligent supervision, training, and retention of the actual abusers, all of which are cognizable causes of action under existing Florida law and none of which have been excluded from coverage under the terms of the policy. We thus find that these complaints are not barred by the intentional acts exclusion of USF & G's policy.
Based upon all of the foregoing, we conclude that USF & G does owe a duty of defense to the appellants in the underlying actions and reverse the summary judgment entered in USF & G's favor in this regard. As the actual facts or evidence to be adduced in the proceedings below, rather than the allegations of the underlying complaints, will be determinative of USF & G's obligation of indemnification, we do not address this issue at this time.
Reversed and remanded for proceedings consistent with this opinion.
NOTES
[1] Neither of these two employees have been named as defendants in either of these actions.
[2] One of whom is the son of appellants Maria and Ignacio Perea Sr.
[3] Specifically, both complaints allege in part that:

* * * *
14. At all times material hereto, Defendant SUNSHINE established, maintained and/or permitted the establishment of such living quarters upon its business premises located in an industrial district of Dade County, in violation of existing code and/or zoning provisions.
15. The establishment, maintenance, and/or authorization for such living quarters resulted in their use as a means for perverse and illegal conduct on multiple occasions by Ignacio Perea, Jr. and Douglas Largaespada, who were provided free and unrestricted access to the premises during non-business hours for their own corrupt purposes.
16. Specifically, prior to the unlawful acts committed against the minor Plaintiff, S.C., SUNSHINE knew or reasonably should have known that its employees, Perea and Largaespada, had committed other lascivious and unlawful acts against minors on SUNSHINE's premises within the confines of the aforementioned living quarters within the warehouse.
17. Despite this actual or constructive knowledge of their employees' aberrant propensities and the perverse exploitation of SUNSHINE's business premises in violation of zoning law, Defendant SUNSHINE failed to take reasonably available precautions to avoid the repeated victimization of young children.
18. Defendant SUNSHINE held a duty to safely operate and maintain its business and premises, and to act reasonably in preventing foreseeable harm from occurring to others as a result of the unlawful acts of its employees, especially those acts which occurred on SUNSHINE's business premises.
19. Defendant SUNSHINE was negligent and breached this duty by allowing Plaintiff S.C. to be exposed to unlawful and explicit sexual acts committed by its employees within SUNSHINE's facility which was made available to its employees without proper supervision or inquiry, and in violation of applicable zoning law.
[4] The complaints further allege that:

20. Specifically, Defendant SUNSHINE was negligent and breached its duty by failing to use reasonable care, and engaging in a course of conduct which fell below the standard of reasonable care in:
a. improperly hiring, retaining, and failing to remove its employees, despite their physical and sexual abuse of children, including the minor Plaintiff, S.C.;
b. failing to properly train, supervise, and monitor its employees and workers;
c. failing to adequately maintain, inspect, and/or safely operate and manage its business premises;
d. allowing its employees to continue in a position where they were free to sexually abuse S.C. and other minor victims after SUNSHINE knew or, in the exercise of reasonable care, should have known, of said abuse;
e. failing to reasonably investigate complaints concerning sexual misconduct of its employees;
f. failing to properly instruct security and supervisory personnel regarding the post-working hours conduct of employees on the premises;
g. failing to restrict and/or monitor the use of its premises during "non-working" hours;
h. failing to properly staff its storage facility;
i. failing to adequately supervise, inspect, or review its employees' activities upon SUNSHINE's premises; and
j. failing to perform sufficient inquiry into the use or purpose of residential living quarters by its employees;
k. failing to immediately suspend or terminate its employees upon the first notice or suspicion of sexual abuse on SUNSHINE's premises pending a complete investigation of said incidents.
* * * *
[5] Indeed, although the Marr court itself expressed similar suspicions that the purported negligence action before it might be a claim for intentional conduct in disguise to reach the insurer's deep pockets, the court nevertheless recognized its duty to confine its analysis solely to the allegations as pled and in so doing, found that a duty to defend existed. See 621 So.2d at 449.
[6] Although the Compupay complaint stated that the employer had both "actual and constructive knowledge" of the intentional acts, it is abundantly clear and indisputable from the gravamen of all of the allegations that the plaintiff was claiming that the employer had actual, not constructive, notice of the alleged acts.
[7] That is because allegations such as these state a classic negligence action. Florida courts have consistently imposed a limited duty to prevent the foreseeable intentional or criminal acts of third parties. See, e.g., Shurben v. Dollar Rent-A-Car, 676 So.2d 467, 468 (Fla. 3d DCA 1996) (holding rental car company had duty to warn tourists about local areas of high crime of which it had knowledge); Slawson v. Fast Food Enters., 671 So.2d 255, 257-58 (Fla. 4th DCA) (finding negligent failure of restaurant to eject unruly patron who ultimately sexually assaulted another patron), rev. dismissed, 679 So.2d 773 (Fla. 1996); Premier Ins. Co. v. Adams, 632 So.2d 1054, 1056-57 (Fla. 5th DCA 1994) (involving parent's negligent supervision of child); see also Irvine v. Prudential Property and Casualty Ins. Co., 630 So.2d 579, 580 (Fla. 3d DCA 1993); Holiday Inns, Inc. v. Shelburne, 576 So.2d 322, 325 (Fla. 4th DCA) (although not an insurer of patrons' safety, proprietor of bar is bound to use every reasonable effort to maintain order among those who come upon the premises and are likely to create disorder for other patrons) (citing Stevens v. Jefferson, 436 So.2d 33 (Fla.1983)), rev. dismissed, 589 So.2d 291 (Fla.1991), disapproved on other grounds by Angrand v. Key, 657 So.2d 1146 (Fla. 1995); Garcia v. Duffy, 492 So.2d 435, 438 (Fla. 2d DCA 1986) (employer's duty to refrain from negligent hiring); Reichenbach v. Days Inn, Inc., 401 So.2d 1366, 1367 (Fla. 5th DCA 1981) (finding innkeeper may be liable if he fails to take reasonable precautions to deter the type of criminal activity which resulted in a guest's injury), rev. denied, 412 So.2d 469 (Fla.1982); Holley v. Mt. Zion Terrace Apts., Inc., 382 So.2d 98, 99-100 (Fla. 3d DCA 1980) (negligent failure by landlord to provide security for tenant murdered by another tenant). The legal focus of each of these cases has been the negligence on the part of the defendant in failing to respond to a known possible intentional act of a third party. See 382 So.2d at 99-100. In other words, something allegedly put the defendant on notice such that the defendant knew or should have known of the potential for the intentional tort or criminal activity of the third party. See id. at 100.
[8] The supreme court also concluded that the business pursuits exclusion in the insured's homeowners policy also precluded coverage. 546 So.2d at 1053.
[9] There are no allegations that seek to hold the insured appellants strictly or vicariously liable for the intentional acts of their two employees. Indeed, there are no allegations that the acts occurred within the scope of the employees' employment with appellants. Rather, all of the allegations suggest that these two employees brought the minor children to their living quarters at the business during non-business hours.