845 So.2d 276 (2003)
BARRY UNIVERSITY, INC., Appellant,
v.
FIREMAN'S FUND INSURANCE COMPANY OF WISCONSIN, Appellee.
No. 3D02-995.
District Court of Appeal of Florida, Third District.
May 14, 2003.
*277 Bilzin Sumberg Dunn Baena Price & Axelrod and Mitchell Widom and Raquel M. Gonzalez, San Diego, CA, for appellant.
Hinshaw & Culbertson and Andrew E. Grigsby, Miami; Caron, Constants & Wilson and Alfred Constants III, for appellee.
Before SCHWARTZ, C.J.,[*] and COPE and GODERICH, JJ.
COPE, J.
Barry University, Inc. appeals an adverse declaratory judgment on insurance coverage. We affirm.
In four separate lawsuits, former students sued Barry University following the withdrawal of accreditation for the physical therapy program in which they were enrolled. While there are minor differences between the complaints, all allege that in 1994, Barry University achieved probationary accreditation for its new physical therapy program but the written report by the accreditation organization raised a number of concerns. The complaints allege that in its recruitment materials, Barry did not disclose that the accreditation status was probationary. In May of 1996, there was another accreditation report that raised serious questions about the quality of the physical therapy program and the accreditation status.
The plaintiffs began their studies in the fall of 1996 with an anticipated graduation date of June 1999. They say that they were not informed of any of the foregoing information. According to the complaints, the University told the students there was no problem with accreditation and the students should not be concerned about it.
The accreditation organization withdrew accreditation effective October 30, 1996. The students were advised of this but were told that the University was seeking reconsideration and that existing students would be considered graduates of an accredited program for purposes of taking the licensing examination. It is alleged that Barry did not act diligently on the reconsideration. The accreditation organization refused reconsideration and the withdrawal of accreditation came final in August of 1997.
As a result, the plaintiffs became ineligible to sit for the licensing examination. This required them to enroll in other physical therapy programs in order to be permitted to take the licensing examination.
The students filed suit against the University. They alleged breach of contract, fraud in the inducement, and violations of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA").
The University is covered by a commercial general liability policy issued by appellee Fireman's Fund Insurance Company of Wisconsin. The University requested that Fireman's Fund defend the cases and indemnify the University.[1] It refused to do so.
*278 The University filed this action for a declaratory judgment. The trial court entered judgment in favor of Fireman's Fund, and the University has appealed.
We agree with Judge Genden's analysis, which states in part:
2. [T]he former students seek damages for inter alia, mental distress, anxiety disorders, post-traumatic stress disorder and depression, as a result of BARRY's physical therapy program having lost its accreditation. In support of its motion [for summary judgment], BARRY asserts that the material allegations in the former students' claims trigger FIREMAN'S duty to defend, based both on Florida law and on the terms of the insurance contract. All counts of the complaints, with the exception of breach of contract counts in the Aguilera, Turner and Amelkin complaints, allege intentional torts, which are excluded from coverage.
3. The operative language of the commercial general liability policy provides that the insurance "applies to bodily injury ... only if the bodily injury ... is caused by an occurrence that takes place in the coverage territory ..." The policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." In addition, the policy states that coverage is excluded for "bodily injury ... expected or intended from the standpoint of the insured ..." Commercial General Liability Coverage Form CG00 01 10 93 at 1, 12.
4. Based on the policy definition of "occurrence," and the specific exclusion of coverage for "bodily injury ... expected or intended from the standpoint of the insured," BARRY asserts that not only does the policy cover accidental events, but also it covers bodily injury that is not expected or intended by the insured.
5. Under Florida law, an insurer's duty to defend an insured in an action, whether groundless or not, must be measured by the allegations of the complaint. Castro v. Allstate Insurance Co., 724 So.2d 133, 135 (Fla. 3d DCA 1998). If the complaint, fairly read, alleges facts which create potential coverage under the policy, the insurer must defend the lawsuit. Illinois Insurance Exchange v. Scottsdale Insurance Co., 679 So.2d 355, 357 (Fla. 3d DCA 1996); Fun Spree Vacations, Inc. v. Orion Insurance Company, 659 So.2d 419, 421 (Fla. 3d DCA 1995).
6. BARRY argues that FIREMAN'S duty to defend is mandated by State Farm Fire & Casualty Co. v. CTC Development Corp., 720 So.2d 1072, 1076 (Fla.1998), wherein the Florida Supreme Court held that "where the term `accident' in a liability policy is not defined, the term, being susceptible to varying interpretations, encompasses not only `accidental events,' but also injuries or damages neither expected nor intended from the standpoint of the insured." The Court finds that CTC Development Corp. is factually distinguishable from the case at bar. In CTC, the owner of a construction company called upon its insurance company to provide a defense, under a contractor's policy, for the mistaken construction of a home. The owner of the company admitted that he constructed *279 the house knowing that it violated the applicable setback. However, he asserted that he was under the mistaken impression that his request for variance had been approved. In contrast, in the case at bar, the former student plaintiffs have alleged that BARRY'S conduct was intentional, not mistaken. Therefore, the court finds as a matter of law that no fair reading of the complaint alleges facts which create coverage under the subject policy of insurance with FIREMAN'S.
We agree with Judge Genden that the material allegations involve intentional conduct on the part of the University which cannot fairly be regarded as an "accident" within the meaning of the CTC Development case.
The University points out, however, that in two of the complaints, the following allegation is contained: the University "knew or recklessly disregarded facts that should have put it on notice that its Master of Science, Physical Therapy Program would not receive full accreditation." R. 374, 382. The University argues that under our cases, "recklessly" means negligent or at least non-intentional. We disagree with the University's interpretation.
The University relies on SM Brickell Ltd. Partnership v. St. Paul Fire & Marine Ins. Co., 786 So.2d 1204 (Fla. 3d DCA 2001). In that case we held that a claim of negligent defamation was covered by the commercial general liability policy, but the claim of intentional wrongdoing was not. Id. at 1205-06. While there was an allegation of reckless conduct, id. at 1205 n. 1., our holding was that the negligence claim fell within the terms of the insurance policy.
The University relies on Castro v. Allstate Insurance Co., 724 So.2d 133 (Fla. 3d DCA 1998). In that case a police officer engaged in horseplay by tickling a co-officer's ear with the antenna of his handheld radio. The recipient turned around quickly and unexpectedly, which forced the antenna into his ear canal and ruptured the eardrum. The question in that case was whether this incident was an "occurrence" within the meaning of a homeowner's policy "because there was no coverage for bodily injury which is `expected or intended' by the insured." Id. at 134. We concluded that there was coverage because "the evidence is clear that Rodriguez, while intending to touch Castro, intended no harm." Id. The opinion said the complaint had alleged "that it was not an intentional act but Rodriguez's reckless disregard that caused Castro's injuries." Id. at 135.
The University reads this case to say that if the complaint alleges reckless conduct, it follows that there must be coverage. We do not think that is a fair reading of Castro. The factual allegations must be examined. Under the facts of Castro the harm was not expected or intended. Use of the term "reckless" was not dispositive.
The University relies on Sunshine Birds and Supplies, Inc. v. U.S. Fidelity and Guar. Co., 696 So.2d 907, 910-11 (Fla. 3d DCA 1997). The question in that case was whether coverage had "been triggered by the allegations of the underlying complaints." Id. at 910. Since the Sunshine Birds complaint alleged negligence among other things, id. at 911 n. 7, there was coverage.
For the stated reasons, the declaratory judgment is affirmed.
NOTES
[*] Chief Judge Schwartz did not hear oral argument, but participated in the decision.
[1] The University also had an educator's legal liability insurance policy with another company, which has acknowledged coverage.